# United States Court of Appeals for the Federal Circuit

---

**ABB INC. AND ABB HOLDINGS, INC.**
*Plaintiffs-Appellants,*

**v.**

**COOPER INDUSTRIES, LLC AND
COOPER POWER SYSTEMS, INC.,**
*Defendants-Appellees.*

---

2010-1227

---

Appeal from the United States District Court for the Southern District of Texas in case no. 09-CV-2394, Judge Kenneth M. Hoyt.

---

Decided: February 17, 2010

---

DAVID L. BURGERT, Porter & Hedges, LLP, of Houston, Texas, argued for plaintiffs-appellants. On the brief were KYLE B. FLEMING, TODD R. TUCKER and JAY R. CAMPBELL, Renner, Otto, Boisselle & Sklar, LLP, of Cleveland, Ohio.

ROBERT J. MCAUGHAN, JR., Locke Lord Bissell & Liddell LLP, of Houston, Texas, argued for defendants-appellees. With him on the brief were CRAIG L. WEINSTOCK and THOMAS L. CASAGRANDE.

---

ABB v. COOPER INDUSTRIES                                    2

Before RADER, *Chief Judge*, LOURIE and DYK, *Circuit Judges*.

DYK, *Circuit Judge*.

Plaintiffs ABB Inc. and ABB Holdings, Inc. (collectively "ABB") filed a declaratory judgment action against defendants Cooper Industries, LLC and Cooper Power Systems, Inc. (collectively "Cooper") seeking a declaration of noninfringement as to the claims of several Cooper patents. The district court dismissed ABB's claim for lack of subject matter jurisdiction, determining that the case did not arise under the patent laws and that there was no diversity of citizenship. *ABB Inc v. Cooper Indus., LLC*, 2010 WL 376310 (S.D. Tex. Jan. 26, 2010). We reverse because we conclude that ABB's declaratory judgment action did arise under the patent laws, and that jurisdiction was conferred by 28 U.S.C. § 1338.

## BACKGROUND

Cooper is the owner of United States patent numbers 6,037,537, 6,184,459, 6,352,655, 6,398,986, 6,613,250, and 6,905,638. These patents involve electrical equipment containing dielectric fluid, which is used to electrically insulate and thermally protect equipment such as transformers. In 2003, Cooper sued ABB in federal court in Wisconsin, claiming that BIOTEMP, an ABB produced vegetable oil based dielectric fluid, infringed. ABB and Cooper settled that lawsuit in 2005 and entered into a Settlement and License Agreement wherein Cooper granted ABB a non-exclusive "license under the Cooper Patents to make, have made, use, have used, offer to sell, have offered to sell, sell, have sold, import, have imported, export or have exported BIOTEMP." J.A. 141. However, the agreement also provided that "[l]icenses do not include the right of any third party to make BIOTEMP or any other fluid covered by the Cooper Patents." J.A. 142.

ABB paid Cooper a lump-sum of $1,000,000 in exchange for the license. In the agreement, ABB also "acknowledge[d] that each of [Cooper's patents-in-suit] is valid and enforceable" and "further acknowledge[d] that BIOTEMP is covered by one or more claims of the Cooper Patents asserted in the Litigation." J.A. 145.

After signing the settlement, ABB began outsourcing the manufacture of BIOTEMP to Dow Chemicals ("Dow"). ABB also contracted to indemnify Dow against claims of infringement by Cooper. On June 12, 2009, Cooper wrote to both ABB and Dow concerning Dow's manufacture of BIOTEMP for ABB. In its letter to ABB, Cooper took the position that ABB's rights under the "have made" provision of the settlement agreement "do not include the right of third parties such as Dow to manufacture BIOTEMP." J.A. 20. "Therefore," it continued, "any attempt by ABB to outsource the manufacture of BIOTEMP to any entity other than an ABB Related Company . . . would be a material breach, and Cooper will act vigorously to protect its rights in that event." *Id.* Similarly, Cooper wrote to Dow: "We wish to formally put Dow on notice that Cooper will vigorously defend its rights should Dow attempt to make products covered by one or more of Cooper's patents." J.A. 23.

On July 29, 2009, ABB filed its declaratory judgment action in the United States District Court for the Southern District of Texas, initially seeking a declaration that its activities were authorized under the license agreement. In September 2009, Cooper filed its own declaratory judgment action in Texas state court, seeking a declaration that the license did not include the right to have Dow manufacture BIOTEMP for ABB and that

ABB v. COOPER INDUSTRIES                                    4

ABB's actions were outside the scope of the agreement.[1] On November 16, 2009, ABB amended its original complaint, seeking declarations that it "does not infringe, and has not infringed directly, indirectly, willfully or otherwise, any valid enforceable claim" of the Cooper patents-in-suit. J.A. 58–61.[2]

Cooper moved to dismiss ABB's declaratory judgment claim for lack of subject matter jurisdiction, arguing that there was no actual controversy involving infringement and that, in any event, ABB's complaint raised only a state law license defense to infringement. In its opposition to Cooper's Motion to Dismiss, ABB did not assert any potential federal defenses, such as invalidity, and instead relied on Cooper's potential claim for patent infringement (which was allegedly defeated by a license defense) to demonstrate jurisdiction. At oral argument, ABB asserted that it raised federal defenses of invalidity and unenforceability. However, ABB admitted that these defenses were not "articulated in the [district court] record" and that it "certainly did not go into detail" about the federal defenses. Oral Arg. at 2:52-54, 3:41-44, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/2010-1227/all. The district court found "the issues raised by ABB's complaint sound[ed] entirely in contract and hinge[d] exclusively on the interpretation and construction of the terms of the [settlement agreement]—matters governed entirely by state law." *ABB*, 2010 WL 376310 at *3. Therefore, it concluded, "since

---

[1]    The Texas state court has granted partial summary judgment to Cooper on this issue but has also denied Cooper's request for summary judgment that the contract contains a negative implied covenant on the part of ABB not to infringe.

[2]    Dow has also filed an ongoing declaratory judgment action against Cooper in federal district court in Indiana.

ABB's [complaint] presents no federal question . . . and only entails a determination of the parties' rights under the [settlement agreement], this case must be dismissed for lack of subject matter jurisdiction." *Id.* at *4. ABB timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

This court reviews a district court's dismissal for lack of subject matter jurisdiction de novo. *Air Measurement Techs. Inc. v. Akin Gump Strauss Hauer & Feld, LLP*, 504 F.3d 1262, 1267 (Fed. Cir. 2007). Section 1338 grants federal question jurisdiction in "any civil action relating to patents." 28 U.S.C. § 1338.

I

Cooper first asserts that subject matter jurisdiction does not exist because there was no actual controversy surrounding infringement but instead a dispute about contract interpretation. An Article III case or controversy exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). *MedImmune* rejected our prior, more stringent standard insofar as it included a requirement of a "reasonable apprehension of imminent suit." *Id.* at 132 n.11; *see also SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1378–80 (Fed. Cir. 2007) (recognizing *MedImmune*'s rejection of the reasonable apprehension test); *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1338–39 (Fed. Cir. 2007) (same).

ABB v. COOPER INDUSTRIES 6

Thus, a specific threat of infringement litigation by the patentee is not required to establish jurisdiction, and a "declaratory judgment action cannot be defeated simply by the stratagem of a correspondence that avoids magic words such as 'litigation' or 'infringement.'" *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009). Cooper's argument that the controversy must be judged based on the actually threatened litigation is an impermissible attempt to revive the "reasonable apprehension of imminent suit" test rejected by the Supreme Court in *MedImmune*.

Despite Cooper's attempt to characterize the controversy as solely involving a state law issue, there was a controversy "of sufficient immediacy and reality" surrounding infringement "to warrant the issuance of a declaratory judgment." *See MedImmune*, 544 U.S. at 127. Cooper clearly advised ABB and Dow that they had no rights under the license. Cooper stated that it "will act vigorously to protect its rights," J.A. 20, and that it would "vigorously defend its rights," J.A. 23. Cooper does not contend in its brief here that it can recover damages against ABB on a breach of contract theory for the Dow outsourcing, and the Texas district court rejected Cooper's argument that the contract contains an enforceable negative implied covenant on the part of ABB not to infringe.[3] To obtain an injunction or damages remedy, Cooper would have to sue ABB for induced infringement

---

[3] Even if it did, such a claim would be within federal subject matter jurisdiction because Cooper's "right to relief [would] necessarily depend[] on resolution of a substantial question of federal law," i.e. whether ABB had, in fact, infringed the patents. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 27–28 (1983)).

or Dow for direct infringement (which would have obligated ABB to indemnify Dow).

In *MedImmune*, the Supreme Court held that statements similar to Cooper's created a case or controversy sufficient to establish declaratory judgment jurisdiction. *See* 549 U.S. at 121–22. The respondent in *MedImmune* "delivered petitioner a letter expressing its belief that [the accused product] was covered by [one of respondent's patents] and its expectation that petitioner would pay royalties," and the Court found there was a case or controversy. *Id.* Under similar circumstances, our court recently applied the *MedImmune* standard in finding an infringement controversy where the declaratory defendant had sent veiled warnings to the declaratory plaintiff and had already sued other companies that produced the same product accused of infringement. *See Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 899–901 (Fed. Cir. 2008). We found these facts "show[ed] a substantial controversy between parties with adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 902. The warning letters from Cooper to ABB and Dow indicate that, under *Micron* and *MedImmune*, there was an immediate controversy surrounding infringement. ABB had an interest in determining whether it would incur liability for induced infringement, and it had an interest in determining whether it would be liable for indemnification, which turned on whether Dow would be liable for infringement. *See Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 733, 736–37 (Fed. Cir. 1988).

II

Cooper argues that, even if there is an immediate controversy as to infringement, that controversy would be insufficient to create jurisdiction under section 1338

ABB v. COOPER INDUSTRIES                                                      8

because ABB raises only a state law defense to the infringement claim.[4] Cooper argues that controversy does not create federal jurisdiction. In determining whether there is federal subject matter jurisdiction for declaratory judgment actions: "[I]t is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court." *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248 (1952).[5] In other words, the court examines the declaratory *defendant's* hypothetical well-pleaded complaint to determine if subject matter jurisdiction exists. *See Franchise Tax Bd.*, 463 U.S. at 16, 19 (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950)); *see also Speedco, Inc. v. Estes*, 853 F.2d 909, 912 (Fed. Cir. 1988) (applying, under *Skelly Oil*, "the well-pleaded complaint rule not to the declaratory judgment complaint, but to the action that the declaratory defendant would have brought"). Thus, for declaratory judgment suits, the character of the action is judged based on the declaratory judgment defendant's hypothetical complaint. *See Wycoff*, 344 U.S. at 248; *Speedco*, 853 F.2d at 912. When the declaratory defendant's hypothetical

---

[4]    Section 1338 provides: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks."

[5]    There are of course two other bases for declaratory jurisdiction—diversity of citizenship and the right of the declaratory judgment plaintiff itself to assert a federal claim. *See Oneida Indian Nation of New York State v. County of Oneida*, 414 U.S. 661, 667 (1974) (finding jurisdiction where declaratory plaintiff's claim asserted a right to possession of property under federal law); *Skelly Oil*, 339 U.S. at 674 (finding jurisdiction against one of several declaratory defendants because there was diversity jurisdiction as to that defendant). Neither basis exists here.

suit arises under federal law, "[w]hat is litigated in such a situation is 'the precise issue which could have been litigated in federal court in a coercive action brought by' the declaratory defendant." *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1179 (5th Cir. 1984) (quoting Wright, Miller & Kane, *Federal Practice and Procedure* § 2767 at 740). We have repeatedly recognized this rule. *See, e.g., Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1578 (Fed. Cir. 1993).

Because the actual controversy in this case is over infringement, the declaratory defendant's hypothetical coercive complaint here is a patent infringement suit. It is well-established that a claim for infringement arises under federal law. Even if the only issue in that suit would be a state law defense, subject matter jurisdiction does not depend on whether a federal law issue will be the crux of the case but instead whether "federal patent law creates the cause of action." *See Christianson*, 486 U.S. at 808. Cooper could unquestionably bring its patent infringement claim in the federal courts, even if ultimate resolution of the case depended entirely on ABB's state law defense, because an infringement suit is a federal cause of action. Therefore, the defendant's cause of action here arises under federal law, and the cases suggest that the district court possesses subject matter jurisdiction over a declaratory action seeking a declaration that there is no infringement liability.

Cooper nevertheless contends that the rule does not apply here because the sole defense actually raised by ABB in the district court was its state law license defense. The question then is whether federal courts have jurisdiction over a declaratory judgment action where there is a federal cause of action but only a state law defense. In *Textron Lycoming Reciprocating Engine Div., AVCO Corp.*

ABB v. COOPER INDUSTRIES                                    10

*v. Auto. Workers*, 523 U.S. 653, 659–60 (1998), the Supreme Court recognized this was an open question.

*Textron* involved a declaratory judgment claim filed under section 301(a) of the Labor Management Relations Act by a union alleging that the employer had fraudulently induced the union into signing a collective bargaining agreement and seeking a judgment that the agreement was voidable. *Id.* at 655. While a contract action under section 301 would arise under federal law, the union's fraudulent inducement defense in *Textron* arose under state law, and the Court said it was "not clear" whether "a declaratory-judgment complaint raising a *nonfederal defense* to an anticipated *federal claim* [ ] would confer [subject matter] jurisdiction." *Id.* at 659 (emphases altered). The Court continued:

> It can be argued that anticipating a federal claim in a suit asserting a nonfederal defense no more effectively invokes [subject matter] jurisdiction than anticipating a federal defense in a suit asserting a nonfederal claim. . . . Perhaps it was the purpose of the Declaratory Judgment Act to permit such anticipation [citing *Franchise Tax Board*], but *Skelly Oil* did not present that issue, and some of its language[6] suggests that the declaratory-judgment plaintiff must himself have a federal claim. No decision of this Court has squarely confronted and explicitly upheld federal-question jurisdiction on the basis of the anticipated claim against which the declaratory-

---

6    There, the Court said that the "suggestion of one party, that the other will or may set up a claim under the Constitution or laws of the United States, does not make the suit one arising under that Constitution or those laws." 339 U.S. at 672 (quoting *Tennessee v. Union & Planters' Bank*, 152 U.S. 454, 464 (1894)).

judgment plaintiff presents a nonfederal defense; and neither the Union nor the Government cites such a decision by any other federal court.

*Id.* at 659–60 (footnotes omitted).

The Court found it did not need to, and did not, decide this subject matter jurisdiction question in *Textron*. In a concurrence, Justice Breyer argued that the Court should have resolved the question and found that the anticipated federal claim would have created subject matter jurisdiction over the declaratory judgment action even though the defense arose under state law. *See* 523 U.S. at 663–65 (Breyer, J., concurring in part and concurring in the judgment). Whether the declaratory plaintiff's defense could "independently" support jurisdiction, he asserted, was "beside the point." *Id.* at 664. Instead, he emphasized, "it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court." *Id.* (quoting *Wycoff*, 344 U.S. at 248).

Subsequent to *Textron*, so far as we have been able to determine, neither the Supreme Court nor any court of appeals has definitively resolved the jurisdictional question raised by *Textron*, and some courts of appeals have recognized that the issue remains open.[7] Despite the lack of direct authority on point and the language in *Skelly Oil*, we conclude that federal question jurisdiction exists here. The general rule, articulated repeatedly by the Supreme Court, is that declaratory judgment jurisdiction exists where the defendant's coercive action arises under federal law. *See Franchise Tax Bd.*, 463 U.S. at 16, 19;

---

[7] *See Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 277–78 n.4 (3d Cir. 2007); *United Food & Commercial. Workers Union v. Albertson's, Inc.*, 207 F.3d 1193, 1196, 1198 (10th Cir. 2000).

ABB v. COOPER INDUSTRIES 12

*Wycoff*, 344 U.S. at 248; *see also Speedco*, 853 F.2d at 912. We see no reason to depart from that general principle where the defense is non-federal in nature.

Moreover, *Franchise Tax Board* speaks specifically to patent infringement suits. In *Franchise Tax Board*, the Court noted that "[f]ederal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question." 463 U.S. at 19. The Court further explained that "federal courts have consistently adjudicated suits by alleged patent infringers to declare a patent invalid, *on the theory that an infringement suit by the declaratory judgment defendant would raise a federal question* over which the federal courts have exclusive jurisdiction." *Id.* at 19 n.19 (citing *E. Edelmann & Co. v. Triple-A Specialty Co.*, 88 F.2d 852 (7th Cir. 1937)) (emphasis added). According to *Franchise Tax Board*, then, federal jurisdiction in this type of case depends on the federal character of the hypothetical infringement suit and not the federal character of the invalidity defense. Indeed, "it now seems settled that [a party threatened with an infringement suit] can sue for a declaratory judgment of invalidity *or* noninfringement [because] the federal nature of the claims appears on the complaint . . . and the precise issue could have been litigated in federal court in a coercive action brought by [the patentee]." 10B Wright, Miller & Kane, *Federal Practice and Procedure* § 2767, at 650–51 (3d ed. 1998) (emphasis added)).

Cooper argues that two older Supreme Court cases, *Luckett v. Delpark, Inc.*, 270 U.S. 496 (1926), and *Wilson v. Sandford*, 51 U.S. 99 (1850), resolve the question in its favor by demonstrating that the federal courts do not have jurisdiction over contract disputes concerning pat-

ents.  Those cases simply hold that a suit to collect royalties under a license and a suit for forfeiture of a license did not arise under federal law.  *Luckett*, 270 U.S. at 502; *Wilson*, 51 U.S. at 102.  They are clearly distinguishable, standing only for the unremarkable proposition that a plaintiff's coercive complaint in a normal civil action does not arise under federal law when it is based on a contract or license.  Those cases predated the Declaratory Judgment Act.  They in no way suggest that a declaratory judgment of non-infringement does not arise under the patent laws.

## III

For the foregoing reasons, we reverse the district court's dismissal of the case for lack of subject matter jurisdiction.

### REVERSED

### COSTS

No costs.