CARFAX, INC., Plaintiff,

v.

RED MOUNTAIN TECHNOLOGIES.,
et al., Defendants.

Case No. 1:14–cv–01590–GBL–IDD.

United States District Court,
E.D. Virginia,
Alexandria Division.

Signed March 30, 2015.

Ahmed Jamal Davis, Fish & Richardson PC, Washington, DC, for Plaintiff.

C. Matthew Haynes, Laurin Howard Mills, Ryan Christopher Day, LeClairRyan PC, Alexandria, VA, for Defendants.

## MEMORANDUM OPINION
## AND ORDER

GERALD BRUCE LEE, District Judge.

THIS MATTER is before the Court on Defendants' Red Mountain Technologies, LLC ("Red Mountain"), Bristol West Holdings, Inc., Bristol West Insurance Company, Inc., and Bristol West Casualty Insurance Company, Inc. (collectively, "Bristol West") Motions to Dismiss. (Docs. 36 and 38.) This case arises from Plaintiff Carfax, Inc. ("Carfax")'s, complaint for patent infringement pursuant to 35 U.S.C. § 271, tortious interference under Virginia law, and a declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. (Compl. ¶¶ 1–3.)

There are four issues before the Court. The first issue is whether the Court should grant Defendants Bristol West and Red Mountain's 12(b)(6) Motions to Dismiss patent infringement claims under 35 U.S.C. § 101, for patent invalidity, where Defendants allege that the patent is directed at the abstract non-patent eligible idea of insurance underwriting and accords no inventive step that would make the abstract idea patent eligible. The second issue is whether the Court should grant Defendant Red Mountain's 12(b)(6) Motion to Dismiss Counts I & II for indirect patent infringement under 35 U.S.C. § 271 where Defendants allege that under 35 U.S.C. § 101 and consistent with the Supreme Court's ruling in *Alice*, the patents are directed towards non-patentable subject matter. The third issue is whether the Court should grant Defendant Red Mountain's 12(b)(6) Motion to Dismiss Count III alleging tortious interference with business expectancy where Defendant alleges that Carfax failed to sufficiently plead the necessary elements under state law. The fourth issue is whether the Court should grant Defendant Red Mountain's 12(b)(1) Motion to Dismiss Count IV for lack of declaratory judgment jurisdiction where Defendant alleges Carfax does not meet the declaratory judgment requirements of Article III "case or controversy" or "immediacy and reality."

The Court GRANTS Defendants Bristol West and Red Mountain's Motions to Dismiss Counts I & II. The Court GRANTS Defendant Red Mountain's Motion to Dismiss Count III with leave to amend and DENIES Count IV. First, as to Counts I and II, the court GRANTS Defendants Bristol West and Red Mountain's 12(b)(6) Motions to Dismiss Counts I & II because, consistent with *Alice*, the patent claims at issue are not patentable subject matter and defendant may not infringe upon a patent that this Court finds to be invalid. Second, as to Count III, Plaintiff's complaint fails to allege sufficient factual matter that Carfax is reasonably certain it would have realized its business expectancy with Progressive, absent Defendant Red Mountain's alleged tortious interference, or that Carfax was or will be damaged. Third, as to Count IV, Plaintiff meets the requirements for declaratory judgment jurisdiction because Plaintiff has "case or controversy" standing as a(n) supplier/indemnitor, Progressive is potentially currently performing the alleged patent infringement, and the roll-out of Progressive's system using Carfax's vehicle history data is in March 2015.

## I. BACKGROUND

Carfax is a Pennsylvania corporation that provides vehicle history data information to businesses, service providers, and government entities under data service contracts with its customers. (Compl. ¶¶ 4, 15.) On August 28, 2012, the United States Patent and Trademark Office issued United States Patent No. 8,255,243 ("the '243 Patent") and United States Patent No. 8,255,244 ("the '244 Patent") both entitled "System and Method for Insurance Underwriting and Rating." (Compl. ¶¶ 16, 17.) Carfax is the owner by assignment of all right, title, and interest in the '243 Patent and the '244 Patent. (Compl. ¶¶ 16, 17.)

Red Mountain and Carfax are competitors in the vehicle history data services market. Red Mountain is an Alabama limited liability company that aggregates, markets, and sells vehicle history data to the automobile insurance industry to evaluate risk and assist in underwriting auto insurance policies. (Compl. ¶¶ 5, 18, 28.) On May 20, 2014, the United States Patent and Trademark Office issued United States Patent No. 8,731,977 ("the '977 Patent"), entitled "System and Method for Analyzing and Using Vehicle Historical Data." Red Mountain is the owner by assignment of the '977 Patent. (Compl. ¶ 22.)

Bristol West is an insurance provider and underwriter that uses Red Mountain's vehicle history data services. (Compl. ¶¶ 19, 20.) Prior to becoming a Red Mountain customer, Bristol West was a customer and consumer of Carfax's vehicle history data services.[1] (Compl. ¶ 21.) Progressive Insurance Inc. ("Progressive"), not party to this suit, is also a consumer of the vehicle history data services provided by Carfax and Red Mountain.[2] (Compl. ¶ 23.)

Carfax filed its Complaint on November 20, 2014, asserting claims of patent infringement pursuant to 35 U.S.C. § 271, tortious interference under Virginia law, and declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Defendants' Motions to Dismiss are now properly before the Court.

## II. DISCUSSION

### A. Standard of Review

a. *Motion to Dismiss—12(b)(1) Lack of Subject Matter Jurisdiction*

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal

---

1. In its complaint, Plaintiff alleged that 1) Defendant Bristol West used Carfax data and the patented methods for underwriting and analyzing insurability under the '243 and '244 patents; (2) Red Mountain knew and intended that Bristol West would use Red Mountain's data using the '243 and '244 patented methods when it left Carfax to be a Red Mountain customer; and, (3) Bristol West did in fact use, and continues to use, the Red Mountain data to practice the patented methods in violation of Carfax's rights. (Compl. ¶¶ 27, 29, 33, 35.)

2. In its complaint, Plaintiff alleged that Red Mountain threatened patent infringement litigation against Progressive if Progressive selected Carfax as its provider of vehicle history data. (Compl. ¶ 24.) As a result, Plaintiff alleged: (1) negotiations with Progressive were hampered; (2) Progressive sought and received from Carfax contractual indemnification from any future patent litigation related to Carfax patents; and, (3) Progressive indicated possible delay in the implementation of a new system using Carfax's data. (Compl. ¶ 25, 41.) Plaintiff further alleged in its memoranda of law to the Court that Plaintiff entered into an August 2014 contract with Progressive to support the January 2015 launch of a new product using Carfax's data. (Doc. 52 at 21, 25.) Plaintiff alleged that, under the August 2014 agreement, Progressive planned to roll-out its new product over a twelve month period beginning March 2015. (Doc. 52 at 27.)

when the court lacks jurisdiction over the subject matter of the action. FED.R.CIV.P. 12(b)(1). In considering a 12(b)(1) motion to dismiss, the burden is on the plaintiff to prove that federal subject matter jurisdiction is proper. *See United States v. Hays,* 515 U.S. 737, 743, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995) (citing *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)); *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982). There are two ways in which a defendant may present a 12(b)(1) motion. First, a defendant may attack the complaint on its face when the complaint "fails to allege facts upon which subject matter jurisdiction may be based." *Adams,* 697 F.2d at 1219. In such a case, all facts as alleged by the plaintiff are assumed to be true. *Id.*

Alternatively, a 12(b)(1) motion to dismiss may attack the existence of subject matter jurisdiction over the case apart from the pleadings. *See Williams v. United States,* 50 F.3d 299, 304 (4th Cir.1995) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977)); *White v. CMA Constr. Co.,* 947 F.Supp. 231, 233 (E.D.Va.1996). In such a case, the court may consider evidence outside the pleadings and regard the pleadings as mere evidence to determine the existence of jurisdiction. *Velasco v. Gov't of Indonesia,* 370 F.3d 392, 398 (4th Cir. 2004). As a result, plaintiff's allegations find no presumption of truth, and a dispute of material facts will not preclude the trial court from evaluating the merits of claims underlying jurisdiction. *U.S. ex rel. Vuyyuru v. Jadhav,* 555 F.3d 337, 347 (4th Cir.2009).

 b. *Motion to Dismiss—12(b)(6) Failure to State a Claim*

Federal Rule of Civil Procedure 12(b)(6) enables a defendant to move for dismissal by challenging the sufficiency of the plaintiff's complaint. Fed.R.Civ.P. 12(b)(6). A Rule 12(b)(6) motion should be granted where a plaintiff has failed to "state a plausible claim for relief" under Rule 8(a). *Walters v. McMahen,* 684 F.3d 435, 439 (4th Cir.2012) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). To be facially plausible, a claim must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 554 (4th Cir.2013) (quoting *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937). In order to survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations, taken as true, "to raise a right to relief above the speculative level" and "nudg[e] [the] claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.,* 708 F.3d 527, 543 (4th Cir.2013) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The requirement for plausibility does not mandate a showing of probability but merely that there is more than a mere possibility of the defendant's unlawful acts. *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir.2009) (quoting *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937). As a result, a complaint must contain more than "naked assertions" and "unadorned conclusory allegations" and requires some "factual enhancement" in order to be sufficient. *Id.* (citing *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937, and *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

The court's Rule 12(b)(6) review involves separating factual allegations from legal conclusions. *Burnette v. Fahey,* 687 F.3d 171, 180 (4th Cir.2012). In considering a Rule 12(b)(6) motion, a court must give all reasonable inferences to the plaintiff and accept all factual allegations as true. *E.I.*

*du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir.2011) (citations omitted). Though a court must accept the truthfulness of all factual allegations, it does not have to accept the veracity of bare legal conclusions. *Burnette,* 687 F.3d at 180 (citing *Aziz v. Alcolac, Inc.,* 658 F.3d 388, 391 (4th Cir.2011)). A court should also consider documents beyond the complaint including any "documents incorporated into the complaint by reference." *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.,* 576 F.3d 172, 176 (4th Cir. 2009) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007)).

A court must grant a Rule 12(b)(6) motion where a complaint fails to provide sufficient non-conclusory factual allegations to allow the court to draw the reasonable inference of the defendant's liability. *Giacomelli,* 588 F.3d at 196–97 (citing *Iqbal,* 556 U.S. at 678–79, 129 S.Ct. 1937 and *Gooden v. Howard Cnty., Md.,* 954 F.2d 960, 969–70 (4th Cir.1992) (en banc)).

### B. Analysis

The Court GRANTS Defendants Bristol West and Red Mountain's Motions to Dismiss Counts I & II. The Court GRANTS Defendant Red Mountain's Motion to Dismiss Count III with leave to amend and DENIES Count IV. First, as to Counts I and II, because, consistent with *Alice,* the '243 and '244 patent claims at issue are directed towards non-patentable subject matter and an invalid patent may not be infringed upon. Second, as to Count III, because Plaintiff's complaint fails to allege sufficient factual matter to meet the requirements for tortious interference under Virginia law. Third, as to Count IV, because Plaintiff meets the requirements for declaratory judgment jurisdiction because Plaintiff has "case or controversy" standing as a(n) supplier/indemnitor.

### a. Patentability Under 35 U.S.C. § 101

■ The court GRANTS Defendants Bristol West and Red Mountain's 12(b)(6) Motions to Dismiss Counts I & II because, consistent with *Alice,* patent claims directed towards "underwriting an insurance policy" and "determining insurability of a vehicle" using (1) vehicle history data, (2) a non-transitory computer readable media with code, and (3) computer components or an apparatus to underwrite an insurance policy or determine insurability of a vehicle are abstract ideas without an inventive concept and accordingly are not patentable subject matter.

■ Courts address patent eligibility under § 101 as a threshold inquiry and resolve it as a matter of law without first construing the claims. *See Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada,* 687 F.3d 1266, 1273–74 (Fed.Cir. 2012). A party seeking to establish that particular claims are invalid must overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence. *CertusView Techs., LLC v. S & N Locating Servs., LLC,* 111 F.Supp.3d 688, 707–08, No. 2:13cv346, 2015 WL 269427 at *15 (E.D.Va. Jan. 21, 2015) (citing *Nystrom v. TREX Co.,* 424 F.3d 1136, 1149 (Fed.Cir.2005)). The Supreme Court mandates a two-step analysis, set forth in *Mayo* and *Alice,* for assessing patent eligibility under § 101. *Alice Corp. Pty. Ltd. v. CLS Bank Intern.,* —— U.S. ——, 134 S.Ct. 2347, 2355, 189 L.Ed.2d 296 (2014) (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.,* —— U.S. ——, 132 S.Ct. 1289, 182 L.Ed.2d 321 (2012)). *Alice* Step One requires a court to determine whether the claims at issue are directed toward laws of nature, natural phenomena, and abstract idea. *Id.* (citing *Mayo,* 132 S.Ct. at 1296–97). *Alice* Step Two requires the court to determine whether there exists an "an inventive concept" be-

yond the abstract idea. *Id.* (citing *Mayo,* 132 S.Ct. at 1294, 1297–98). Once a court decides that a claim is for an abstract idea with no inventive concept, various claim types (method, system, etc.) directed to the same invention should rise and fall together. *See id.* at 2360 (invalidating under § 101 system claims that were "no different from the method claims in substance.").

At the pleading stage, the Court derives "clear and convincing evidence" of a patent's invalidity from the patent claims. *See id.* at 2359 (explaining that at *Alice* Step One the court must evaluate the claims "[o]n their face" to determine to which "concept" the claims are "drawn" and, at *Alice* Step Two, the Court must evaluate the invention as described by the claims.)

Here, Carfax asserts that Defendants infringed "at least Claim 1" of the '243 and '244 patents. (Compl. ¶¶ 27, 28, 33, 34). In response, Defendants allege that the '243 and '244 patents are invalid under both 35 U.S.C. § 101 and the Supreme Court's recent ruling in *Alice* for three reasons. First, because the Asserted Patents implement the abstract idea of mitigating vehicle insurance risk using vehicle history data on generic computer equipment. Second, because the Asserted Patents do not contain an "inventive concept" necessary to transform the abstract idea into patentable subject matter. Third, Defendants assert that the question of patent-eligible subject matter is a question of law and courts routinely dismiss, at the pleadings stage and without formal claim construction, patent infringement complaints on § 101 grounds.

The Court agrees with Defendants that the Court may dismiss Carfax's claims of patent infringement on § 101 grounds at the pleadings stage because patent-eligible subject matter is a question of law. *See In*

*re Roslin Institute (Edinburgh),* 750 F.3d 1333, 1335 (Fed.Cir.2014) ("Section 101 patent eligibility is a question of law."); *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,* 56 F.Supp.3d 813, 816 (E.D.Va.2014) (citing *buySAFE, Inc. v. Google, Inc.,* 765 F.3d 1350 (Fed.Cir.2014)) ("Accordingly, a court may invalidate patent claims directed to non-eligible subject matter on the pleadings."). Therefore, the issue before the Court is whether Plaintiff's '243 and '244 patents are directed at patent-eligible subject matter. The Court decides the question of patent-eligible subject matter as follows:

### i. '243 Patent Claims

After reviewing the '243 Patent claims on their face and evaluating the invention as described by the claims, the Court makes the following findings as to the '243 Patent claims. The '243 patent is entitled "System and Method for Insurance Underwriting and Rating." ('243 patent at 1:1–2). Claim 1 is directed at a method for underwriting an insurance policy. ('243 patent at 20:2–23). Claims 2–15 depend on Claim 1. ('243 patent at 20:24–21:38). Claim 16 is directed at a non-transitory computer readable media with code to perform Claim 1. (*Id.* at 21:37–38). Lastly, Claim 17 is directed at an apparatus for "underwriting an insurance policy." (*Id.* at 21:39–52). Claims 18–31 depend on Claim 17. (*Id.* at 21:53–22:64). Claim 1 is representative of independent Claim 17.

### (1) *Analysis of '243 Patentability Under Alice Step One*

Applying the analytical framework of *Alice* Step One, the Court holds that Claims 1 and 17 of the '243 patent are directed toward the abstract idea of "underwriting an insurance policy" because the claims recite (1) a business method of

organizing human activity and (2) a well-established, fundamental practice.

The Court finds that Claim 1 is directed at a business method of "organizing human activity" for underwriting an insurance policy where the first three steps of the method instruct users to obtain data for a vehicle and review it, while the remaining steps instruct users to value it to determine whether to issue an insurance policy or the applicable rate to charge for vehicle insurance. *See Alice,* 134 S.Ct. at 2356 (explaining that a "method of organizing human activity" can fall within the patent-ineligible category of abstract ideas); *see also Bilski v. Kappos,* 561 U.S. 593, 611, 130 S.Ct. 3218, 177 L.Ed.2d 792 (2010) (finding that a claim is an abstract idea because it was drawn to a method for organizing human activity).

Similar to the patents in this case, the patent in *Bilski* involved a series of steps instructing how to hedge risk. *See id.* at 599, 130 S.Ct. 3218. In *Bilski,* the Court held that risk hedging is a method of organizing human activity. *Id.* at 611, 130 S.Ct. 3218; *see also Alice,* 134 S.Ct. at 2357 (finding that a claim is an abstract idea because it was drawn to the use of a third party to mitigate settlement risk). Because Claim 1 of the '243 patent is directed toward a business method of "organizing human activity" for "underwriting an insurance policy," the Court finds that it is directed toward an abstract idea. *See* '243 patent 4:14–18 ("[T]he term 'underwriting' encompasses both the act of deciding whether or not to offer a policy to an applicant/vehicle as well as the act of assigning an applicant/vehicle to a particular policy class based upon *the risk* posed by the applicant/vehicle.") (emphasis added).

Even if the Court found that Claim 1 was not directed towards an abstract method of organizing human activity, the Court finds that it is directed at a well-established, fundamental practice. *See Alice,* 134 S.Ct. at 2356–57 (explaining that a "fundamental economic practice" can fall within the patent-ineligible category of abstract ideas); *see also Bilski,* 561 U.S. at 611, 130 S.Ct. 3218 ("Hedging is a fundamental economic practice long prevalent in our system of commerce.") (internal citations omitted). In the '243 patent, Plaintiff itself established that underwriting an insurance policy is a fundamental business practice because:

> the market for used vehicles ... has evolved into a substantial market [in] the United States.... Consequently, services have been created that function primarily to provide certain limited vehicle history information to various parties in the used vehicle market, including, for example, insurance providers [who recognize the value of information ... related to a vehicle in making a decision to write a new policy and determining the price of that policy.]

*See* '243 patent 1:25–37. The Court finds that, because the claims in the '243 patent are directed at the fundamental business practice of "underwriting an insurance policy," they are directed towards an abstract idea.

For the same basic reasons, the Court finds that Claim 17 is directed at the abstract idea of "underwriting an insurance policy."

### (2) *Analysis of '243 Patentability Under Alice Step Two*

Applying the analytical framework of *Alice* Step Two, the Court holds that Claims 1 and 17 of the '243 patent do not transform the abstract idea of "underwriting an insurance policy" to an inventive concept because they do not pass the muster of the machine-or-transformation test.

Under the machine-or-transformation test, a claimed process can be patent-eligible under *Alice* Step Two if: "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (2014) (citing *In re Bilski*, 545 F.3d 943, 954 (Fed.Cir.2008) (en banc), *aff'd on other grounds*, *Bilski*, 561 U.S. 593, 130 S.Ct. 3218). While the machine-and-transformation test is not the sole test for determining inventiveness it does provide a useful clue. *Id.* (citing *Bilski*, 561 U.S. at 604, 130 S.Ct. 3218).

■ Claims 1 and 17 tie the business method of underwriting an insurance policy to generic computer components or hardware, e.g., completing step 1 "in a physical memory of a data processing system" and steps 2 through 4 "using the processing device of the data processing system." *See* '243 patent 20:420. Claim 17 is directed towards an "apparatus" for underwriting an insurance policy. *Id.* at 21:17. Claim 1 and Claim 17 state that the components and apparatus generate a score. *Id.* at 20:18, 21:49. However, the claims do not explain how the process transforms a particular article into a different state or thing and mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention. *Alice*, 134 S.Ct. at 2358 (citing *Mayo*, 132 S.Ct. at 1301) ("[I]f a patent's recitation of a computer amounts to a mere instruction to implement an abstract idea on a computer ... that addition cannot impart patent eligibility.") (internal quotations and citations omitted). Likewise, "[t]he addition of merely novel [apparatus or] components to the claimed idea does not necessarily turn an abstract idea into something concrete." *Ultramercial*, 772 F.3d at 717 (explaining that "[a]ny transformation from the use of

computers or the transfer of content between computers is merely what computers do and does not change the analysis."); *id.* (finding that a patent for a method to distribute copyright media over the internet failed to satisfy the transformation prong of the machine-or-transformation test because the manipulations of business risk are not physical objects or substances and are not representative of physical objects or substances).

The Court finds that Claims 1 and 17 do not pass the muster of the machine-or-transformation test; therefore, the claims do not transform the abstract idea of underwriting an insurance policy to an inventive computer concept. *See Enfish, LLC v. Microsoft Corp.*, 56 F.Supp.3d 1167 (C.D.Cal.2014) (explaining that the "combination of ... ideas and computing concepts constitutes patentable subject matter" and this combination may be found where a claim "recites a modern, computer-specific concept to solve [a] modern, computer-specific problem" and "computing concepts form a significant part of the claim.")

#### (3) '243 is Directed Toward Non–Patent Eligible Subject Matter

Consistent with *Alice*, the Court holds that the '243 patent is directed at the non-patentable subject matter of "underwriting an insurance policy" because the invention consists of an abstract idea without an inventive concept. In addition, the Court holds that because Claims 2–15, Claim 16, and Claims 18–31 are directed to the same invention they fall together with Claims 1 and 17. Therefore, the '243 Patent is invalid in its entirety.

#### ii. '244 Patent Claims

■ After reviewing the '244 Patent claims on their face and evaluating the invention as described by the claims, the

Court makes the following findings as to the '244 Patent claims. The '244 patent has the same title as the '243 patent: "System and Method for Insurance Underwriting and Rating." ('244 patent at 1:1–2). Claim 1 is directed at a method of "determining insurability of a vehicle." ('244 patent at 19:34–57). Claims 2–13 depend on Claim 1. ('244 patent at 19:54–20:65). Claim 14 is directed at a non-transitory computer readable media with code to perform Claim 1. (*Id.* at 21:66–67). Lastly, Claim 15 is directed at an apparatus for "determining insurability of a vehicle." (*Id.* at 21:1–17). Claims 16–45 depend on Claim 17. (*Id.* at 21:18–22:46). Claim 1 is representative of independent Claim 15. The independent claims of the '244 patent and the '243 patent differ primarily by requiring "calculating an insurability" rather than "generating a score." ('244 patent, Cl. 1, 15).

(1) *Analysis of '244 Patentability Under Alice Step One*

Applying the analytical framework of *Alice* Step One, the Court holds that Claims 1 and 15 of the '244 patent are directed toward the abstract idea of "determining insurability of a vehicle" because, on its face, the '244 patent is directed toward the same abstract idea as the '243 patent. *See* '244 patent 4:9–11 ("[T]he term 'insurability' may be used to describe the capability to *underwrite an insurance policy* and . . . to *rate the insurance policy.*") (emphasis added).

(2) *Analysis of '244 Patentability Under Alice Step Two*

Applying the analytical framework of *Alice* Step Two, the Court holds that Claims 1 and 15 of the '244 Patent do not transform the abstract idea of "determining insurability of a vehicle" to an inventive concept because the claims do not pass

the muster of the machine-or-transformation test.

As is the case with the '243 patent, Claim 1 of the '244 patent ties the business method for determining insurability of a vehicle to generic computer components or hardware, e.g., completing step 1 "in a physical memory of a data processing system" and steps 2 through 4 "using the processing device of the data processing system." *See* '244 patent 19:3457. Claim 15 is directed towards an "apparatus" for determining insurability of a vehicle. *See* '244 patent 21:115. Claim 1 and Claim 15 state that the components and apparatus are for calculating insurability. *See.* '244 patent 19:48, 21:13. However, as with the '243 patent, neither of the claims explain how the process transforms a particular article into a different state or thing and mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention. The Court finds that, like the '243 claims, Claims 1 and 15 do not pass the muster of machine-or-transformation test, therefore they do not transform the abstract idea of determining insurability of a vehicle to an inventive computer concept.

(3) *'244 is Directed Toward Non–Patent Eligible Subject Matter*

Consistent with *Alice*, the Court holds that the '244 patent is directed at the non-patentable subject matter of "determining insurability of a vehicle" because the invention consists of an abstract idea without an inventive concept. In addition, the Court holds that because Claims 2–13, Claim 14, and Claims 16–27 are directed to the same invention they fall together with Claims 1 and 15. Therefore, the '244 Patent is invalid in its entirety.

Therefore, the Court GRANTS Defendants Bristol West and Red Mountain's 12(b)(6) Motion to Dismiss. Counts I & II

because, consistent with *Alice*, patent claims directed towards "underwriting an insurance policy" and "determining insurability of a vehicle" using (1) vehicle history data, (2) a non-transitory computer readable media with code, and (3) computer components or an apparatus to underwrite an insurance policy or determine insurability of a vehicle are abstract ideas without an inventive concept and accordingly are not patentable subject matter subject to the patent infringement protections under 35 U.S.C. § 101.

### b. Contributory and Induced Infringement

The Court GRANTS Defendant Red Mountain's 12(b)(6) Motion to Dismiss Counts I & II for indirect patent infringement because Defendant may not infringe upon a patent that this Court finds to be invalid.

■ Indirect patent infringement is either contributory or induced. Contributory infringement pursuant to 35 U.S.C. § 271(c) occurs if a party (1) sells or offers to sell, a material or apparatus for use in practicing a patented process, (2) the "material or apparatus" is material to practicing the invention, (3) the "material or apparatus" has no substantial non-infringing uses, and (4) the "material or apparatus" is known by the party "to be especially made or especially adapted for use in an infringement of such patent." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir.2012) (quoting 35 U.S.C. § 271(c)). To survive a motion to dismiss, pursuant to 35 U.S.C. § 271(b) for induced infringement liability, Plaintiff's complaint must contain facts plausibly showing that the defendant specifically intended its customers to infringe the patents-in-suit and knew that the customer's acts constituted infringement. *In re Bill of Lading*, 681 F.3d at 1339.

Defendant Red Mountain argues that Plaintiff's complaint should be dismissed because it failed to plead the required elements of contributory and induced patent infringement. The Court agrees with Defendant. As discussed above, this Court decided the issue of validity with respect to the '243 and '244 patents. Because the Court finds that, consistent with *Alice*, the '243 and '244 patents are abstract ideas without an inventive concept and accordingly are not patentable subject matter, the Court holds that 35 U.S.C. § 271 does not apply in the present case. Plaintiff's claims plead no "patented process" pursuant to 35 U.S.C. § 271(c). Similarly, Plaintiff's claims plead no "patents-in-suit" pursuant to 35 U.S.C. § 271(b).

Therefore, the court GRANTS Defendant Red Mountain's 12(b)(6) Motion to Dismiss Counts I & II for indirect patent infringement because the Court holds the '243 and '244 patents are invalid and, therefore, Plaintiff cannot plead the required elements of contributory infringement and induced infringement under 35 U.S.C. § 271.

### c. Tortious Interference Under State Law

The Court GRANTS Defendant Red Mountain's 12(b)(6) Motion to Dismiss Count III for tortious interference under Virginia law with leave to amend because Plaintiff's complaint fails to allege sufficient factual matter that Carfax (1) was or will be damaged and (2) was reasonably certain that, absent Defendant's alleged intentional misconduct, Carfax would have realized its business expectancy with Progressive.

■ Under Virginia law, to state a claim for tortious interference with business expectancy a plaintiff must: (1) demonstrate the existence of a business rela-

tionship or expectancy, with a probability of future economic benefit; (2) prove knowledge of the relationship or expectancy; (3) show that it was reasonably certain that absent intentional misconduct, the claimant would have continued in the relationship or realized the expectancy; and (4) show that it suffered damages from the interference. *Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.*, 249 F.3d 204, 213 (4th Cir.2001). The required elements are similar yet distinct from those required to establish tortious interference with contractual relations. *Id. But see id.* at 210 (quoting *Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97 (1985)) ("The elements required for a prima facie showing of the tort are: ... (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy [ ].") Plaintiff must also demonstrate that the defendant employed "improper methods." *See Commerce Funding*, 249 F.3d at 213–14. Conduct that may constitute "improper methods," includes violence, threats, intimidation, bribery, baseless litigation, fraud, deceit, duress, undue influence, unfair competition, or the breach of a fiduciary duty. *See Duggin v. Adams*, 234 Va. 221, 227, 360 S.E.2d 832 (1987). The evidence of a business expectancy must be between identified parties and based upon something that is a concrete move in the direction of fulfilling the expectancy. *See Gov't Emps. Ins. Co. v. Google, Inc.*, 330 F.Supp.2d 700, 705–06 (E.D.Va.2004).

This Court has never adopted as law that, as applied to tortious interference claims, "federal patent law preempts state-law tort liability for a patent holder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation." *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1374 (Fed.Cir.2004). Therefore, for the purposes of Defendant Red Mountain's 12(b)(6) Motion to Dismiss this Court only considers tortious interference with business expectancy under Virginia law.

■ Here, Defendant Red Mountain argues that Carfax failed to successfully plead a claim for tortious interference under Virginia law for four reasons. First, because Carfax failed to allege or provide factual support of their probability of future economic benefit because it was still negotiating with Progressive at the time of the alleged tortious interference. Second, because Carfax failed to allege that it was reasonably certain that, absent Red Mountain's alleged intentional misconduct, Carfax would have continued in the relationship or realized the expectancy because it was still negotiating with Progressive at a time when both Red Mountain and Carfax were competing to be Progressive's provider. Third, because Carfax failed to plead that it suffered damages from the interference. Fourth, because Carfax failed to allege that Red Mountain employed improper methods.

The Court finds that Plaintiff sufficiently plead to the existence of a business expectancy between Carfax and Progressive because plaintiff alleges in its complaint that Progressive was seeking the services offered by Carfax and negotiations with Progressive were hampered by Defendant's threats of patent litigation. (Doc. 1 ¶¶ 23, 25). Plaintiff also alleged that Progressive sought assurances from Carfax and indicated it may delay implementation of a system provided by Carfax. (Doc. 1 ¶ 25). The Court finds that a plausible inference may be drawn that a business expectancy exists where negotiations between two parties includes indication of a "delay" implementing the subject of negotiations. From the "delay," the Court plausibly infers a concrete move in the direction of fulfilling the expectancy.

Therefore, the Court holds that Carfax has sufficiently pled existence of a business expectancy.

The Court finds that Plaintiff sufficiently pled Red Mountain's knowledge of the business expectancy because Plaintiff alleged that Defendant threatened progressive with patent infringement litigation "if Progressive selected Carfax" as Progressive's provider of vehicle history data. (Doc. 1 ¶ 24). From the alleged threat, the Court may plausibly infer Red Mountain's knowledge of Carfax's business expectancy. Therefore, the Court finds that Carfax has sufficiently pled Defendant's knowledge of a business expectancy. The Court also finds that Carfax sufficiently pled that Defendant threatened patent infringement litigation against Progressive. Under Virginia law, threats are an improper method.

However, the Court finds that Carfax did not sufficiently plead facts that it was reasonably certain that, absent Red Mountain's alleged intentional misconduct, Carfax would have realized the expectancy with Progressive. Instead, Carfax pled that Progressive sought assurances from Carfax without pleading additional facts about the scope of the assurances. The Court also finds that Carfax failed to plead sufficient facts that it suffered damages because the totality of the facts support a plausible inference that, despite the alleged tortious interference, Carfax was still able to proceed into a contractual relationship with Progressive.

Therefore, the Court GRANTS Defendant Red Mountain's 12(b)(6) Motion to Dismiss Count III for tortious interference under state law with leave to amend because Plaintiff's complaint fails to contain sufficient factual matter that Carfax (1) was or will be damaged and (b) was reasonably certain that, absent Defendant's alleged intentional misconduct, Carfax

would have realized its business expectancy with Progressive.

#### d. Declaratory Judgment

 The court DENIES Defendant Red Mountain's 12(b)(1) Motion to Dismiss Count IV because this Court finds that Plaintiff has "case or controversy" standing based on (1) Plaintiff's current relationship to Progressive as a supplier/indemnitor, (2) the reality that Progressive is potentially currently performing the alleged patent infringement, and (3) the immediacy of the roll-out of Progressive's system using Carfax's vehicle history data. Therefore, the Court holds that Plaintiff meets the requirements for the Court to exercise jurisdiction over its declaratory judgment claim.

 The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that district courts "may declare the rights and other legal relations of any interested party seeking such declaration[.]" *Bartley v. Merrifield Town Ctr. Ltd. P'ship,* 580 F.Supp.2d 495, 501 (E.D.Va.2008) (citing 28 U.S.C. § 2201(a)). For the Court to have jurisdiction to issue a declaratory judgment, two conditions must be satisfied. *White v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 913 F.2d 165, 167 (4th Cir.1990). First, the dispute must be a "case or controversy" within the confines of Article III of the United States Constitution the "constitutional" inquiry. *Id.* Second, the trial court, in its discretion, must be satisfied that declaratory relief is appropriate the "prudential" inquiry. *Id.*

 The test for a "case or controversy," the constitutional inquiry, is whether the dispute "is definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* (quoting *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937)). "[The dispute] must be a real and

substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* The question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)); *see also MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007).

In the Fourth Circuit, it is well established that a declaratory judgment is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and ... when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Bartley,* 580 F.Supp.2d at 501 (quoting *Aetna Cas. & Sur. Co. v. Quarles,* 92 F.2d 321, 325 (4th Cir.1937)).

### (1) The Dispute is an Article III "Case or Controversy"

In the patent context, "a specific threat of infringement litigation by the patentee is not required to establish jurisdiction." *ABB Inc. v. Cooper Indus., LLC,* 635 F.3d 1345, 1348 (Fed.Cir.2011). Neither is a showing of "actual infringement" required for a case or controversy to exist. *Matthews Int'l Corp. v. Biosafe Eng'g, LLC,* 695 F.3d 1322, 1330 (Fed.Cir. 2012). It is the reality of the threat of injury that is relevant to the standing inquiry. *See Prasco, LLC v. Medicis Pharm. Corp.,* 537 F.3d 1329, 1338–39 (Fed.Cir.2008). Moreover, the immediacy and reality is tied to the potential for performing the alleged infringing activity

and the length of time before the potentially infringing activity is expected to occur. *See Matthews,* 695 F.3d at 1328–30; *see also Cat Tech LLC v. TubeMaster, Inc.,* 528 F.3d 871, 881 (2008). The greater the length of time before potentially infringing activity is expected to occur, the more likely the case lacks the requisite immediacy. *Cat Tech,* 528 F.3d at 881.

Here, Defendants argue that the facts alleged by Carfax, under all the circumstances, show that there is no substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. However, the Court finds that the immediacy and reality that warrant the issuance of a declaratory judgment is evidenced by (1) the August 2014 contract between Carfax and Progressive, (2) the January 2015 launch of Progressive's new product using Carfax's data, and (3) the planned March 2015 rollout of Progressive's new product using Carfax's data to 75% of their states over a twelve month period. Once "significant, concrete steps" to conduct the patent infringing activity in question have been taken, the immediacy requirement is satisfied. *See id.* at 882. The Court also finds the dispute is definite and concrete, touching the legal relations of parties having adverse legal interests. (See discussion below.)

### (2) Declaratory Judgment Will Serve a Useful Purpose

In the patent context the Declaratory Judgment Act addresses those competitors previously victim "[to] patent owner attempts [at] extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity." *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 734–35 (Fed.Cir.1988) (citations omitted).

Here, Defendant argues that Plaintiff's allegations present an indeterminate, hypothetical situation insufficient to create declaratory judgment jurisdiction and that merely informing a third party's customer that it might be infringing a patent holder's patent does not create declaratory judgment jurisdiction between the patent holder and the third party. *See Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed.Cir.2014). However, this Court finds that Plaintiff's vehicle history data is *currently* in use by Progressive thus Carfax is *currently* a supplier of vehicle history data that Progressive uses to analyze risk in underwriting auto insurance policies. The Court also finds that Plaintiff is *currently* an indemnitor because it is obligated to indemnify Progressive from direct infringement liability to Defendant. A supplier has standing to commence a declaratory judgment action when a patent holder accuses the supplier's customers of direct infringement based on the sale or use of the supplier's "equipment" if the supplier is obligated to indemnify its customers from infringement liability. *Arris Grp., Inc. v. British Telecomm. PLC*, 639 F.3d 1368, 1375 (Fed.Cir. 2011) (reversing dismissal for lack of subject matter jurisdiction where patent holder accused plaintiff's customer of infringement); *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed.Cir.2014) ("If [plaintiff] had an obligation to indemnify their customers, they would then have standing to bring suit."); *see also ABB*, 635 F.3d at 1349 (finding that plaintiff "had an interest in determining whether it would be liable for indemnification"). The same is true in the case of liability for indirect infringement. *See Arris Grp.*, 639 F.3d at 1375 ("When the holder of a patent with system claims accuses a customer of direct infringement based on the customer's ... using ... an allegedly infringing system in which a supplier's product func-

tions as a material component, there may be an implicit assertion that the supplier has indirectly infringed the patent.").

The Court finds that a declaratory judgment will serve a useful purpose in clarifying and settling the legal relations at issue in this case; i.e., whether Plaintiff would be liable for indemnification based on whether Progressive would be liable for infringement of Defendant's '977 patent. Thus, the Court finds that declaratory judgment would terminate and afford relief from the uncertainty, insecurity, and controversy of the alleged extra-judicial patent enforcement giving rise to this proceeding.

Therefore, the Court DENIES Defendant Red Mountain's 12(b)(1) Motion to Dismiss Count IV and holds that Plaintiff meets the requirements for declaratory judgment jurisdiction. The Court finds that Plaintiff has "case or controversy" standing based on (1) Plaintiff's current relationship with Progressive as a(n) supplier/indemnitor, (2) the reality that Progressive is potentially currently performing the alleged patent infringement, and (3) the immediacy of the roll-out of Progressive's system using Carfax's vehicle history data.

## III. CONCLUSION

The Court GRANTS Defendants Bristol West and Red Mountain's Motions to Dismiss Counts I & II. The Court GRANTS Defendant Red Mountain's Motion to Dismiss Count III with leave to amend and DENIES Count IV. First, as to Counts I and II, because, consistent with *Alice*, the '243 and '244 patent claims are directed towards non-patentable subject matter and an invalid patent may not be infringed upon. Second, as to Count III, because Plaintiff's complaint fails to allege sufficient factual matter to meet the requirements for tortious interference under Vir-

ginia law. Third, as to Count IV, Plaintiff meets the requirements for declaratory judgment jurisdiction because Plaintiff has "case or controversy" standing as a(n) supplier/indemnitor. Accordingly, it is hereby

**ORDERED** that Defendant Red Mountain Technologies, LLC's Motion (Doc. 38) is **DENIED in PART and GRANTED in PART.** Specifically, as to Counts I & II Defendant Red Mountain Technologies, LLC's Motion is **GRANTED.** As to Count III, Defendant Red Mountain Technologies, LLC's Motion is **GRANTED with leave to AMEND.** However, as to Count IV, Defendant Red Mountain Technologies, LLC's Motion is **DENIED;** and it is further

**ORDERED** that Defendants Bristol West Holdings, Inc., Bristol West Insurance Company, Inc., and Bristol West Casualty Insurance Company, Inc.'s Motion to Dismiss (Doc. 36) is **GRANTED.**

**IT IS SO ORDERED.**